IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHENOA WATTS,** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | **NO. 22-CV-1584** |
| **KILOLO KIJAKAZI,** | : | |
| Commissioner of Social Security | : | |

**MEMORANDUM OPINION**

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                                            June 15, 2023

  Plaintiff Chenoa Watts brought this action seeking review of the Acting Commissioner of Social Security Administration's decision denying her claim for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–433, 11381-11383f.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 8) is **DENIED**.

**I. PROCEDURAL HISTORY**

  Plaintiff protectively filed for SSDI and SSI, alleging disability since March 1, 2019, due to lumbar radiculopathy, arthritis, neuropathy and posttraumatic stress disorder.  (R. 306). Plaintiff's application was denied at the initial level and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 77-154, 200-04).  Plaintiff, represented by counsel, and a vocational expert testified at the November 5, 2021, administrative hearing.  (R. 33-62).  On December 21, 2021, the ALJ issued a decision unfavorable to Plaintiff. (R. 12-32).  Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's

request for review on March 18, 2022, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (R. 1-6).

On April 25, 2022, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania and consented to my jurisdiction pursuant to 28 U.S.C. § 636(C). (Compl., ECF No. 1; Consent Order, ECF No. 2). On July 22, 2022, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review. (Pl.'s Br., ECF No. 8). The Commissioner filed a Response on August 19, 2022, and on September 1, 2022, Plaintiff filed a reply. (Resp., ECF No. 9; Reply, ECF No. 30).

## II.   FACTUAL BACKGROUND[1]

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on September 5, 1979, and was 39 years old on the alleged disability onset date. (R. 261). She graduated from high school. (R. 307). Plaintiff previously worked as a nurse assistant/medical technician, in pharmacy customer service and as a healthcare support service representative. (*Id.*).

Plaintiff enrolled in mental health outpatient treatment at Wedge on October 30, 2018, and attended her first appointment on January 23, 2019, where she reported improved mood, sleep, pain levels and ability to cope with stress due to Cymbalta and therapy. (R. 803). Her

---

[1] As explained more fully below, Plaintiff's Request for Review concerns the ALJ's alleged failure to properly review two sets of treatment records from Wedge Recovery Centers (Wedge), Exhibits 12F (R. 555-660) and 16F (R. 795-1010) in the administrative record. Because the ALJ's treatment of the other evidence is not at issue, the Court summarizes only these records. Moreover, because Exhibit 16F also contains the records included in Exhibit 12F, with the exception of its initial page, the Court cites only to Exhibit 16F for all other records.

mental exam results were normal and she denied any impairment of her activities of daily living (ADLs). (R. 803-04). On March 7, 2019, she reported improved anxiety and pain levels after her Cymbalta dosage was increased. (R. 820). She noted short periods of low mood after the sudden deaths of two neighbors, although therapy helped her cope. (*Id.*). Her mental exam results were again normal, and she again denied any impairment of ADLs. (*Id.*). She was assessed as "much improved," meaning "notably better with significant reduction of symptoms; increase in the level of functioning but some symptoms remain." (R. 826). At a March 15, 2019 treatment plan update (TPU), Plaintiff presented with slightly reduced depressive symptoms rated as a six or seven on a one-to-ten scale, including poor attention, feelings of helplessness, crying spells, sleep disturbances, anhedonia, low energy, poor appetite, and self-isolation. (R. 829-30). She described her medication as having a low impact. (R. 829). She also presented with anxiety symptoms rated at eight out of 10, including persistent worry, distressing and racing thoughts, and irritability, although with reduced impact on her ADLs. (R. 829-30). At a May 31, 2019 appointment, she reported worsening low mood and anxiety after discontinuing gabapentin due to side effects, leading the provider to lower the dose. (R. 832). However, her mental exam results were normal, she denied any impairment of ADLs, and she was again assessed as "much improved." (R. 832, 837). At her next TPU, on July 25, 2019, Plaintiff had "ongoing and intense depressive symptoms" similar to those at her prior update, rated eight or nine, and anxiety and associated symptoms rated as an eight to 10, albeit with reduced impact on ADLs. (R. 841-42).

      On August 2, 2019, Plaintiff reported having enjoyed a trip to Virginia Beach and asked for an increased Cymbalta dose to help further with her depression. (R. 844). On October 11, 2019, she reported "marked improved . . . mood at baseline with improved ability to enjoy

activities and resolution of irritability," albeit with persistent sleep problems due to pain. (R. 852). At both visits, her mental exam results were normal, she had no limits on ADLs and she was rated as "much improved." (R. 844, 847, 852, 857). A December 4, 2019 TPU indicated that Plaintiff was struggling more with anxiety, rated at 10, than depression and that her appetite had returned, but irregularly. (R. 860). She reported flashbacks to her son's traumatic birth, trouble sleeping, and fear of people and of going outside. (R. 860-61). Plaintiff subsequently missed several appointments due to scheduling errors and returned to Wedge on January 10, 2020, where she reported an "overall stable mood" but with ongoing pain-related sleep problems. (R. 879). Mental exam results remained normal, ADLs remained unimpaired, and she was again rated as "much improved." (879-80, 884). On February 5, 2020, Plaintiff underwent an annual clinical reevaluation. (R. 900). She reported "feeling extremely anxious and afraid to go outside several times per week," although she believed her medicine was helping. (*Id.*). She also spoke of intense depression, feeling overwhelmed by caring for her severely disabled son, flashbacks, catastrophic thinking, and avoiding going outside her home. (*Id.*).

      On April 30, 2022, Plaintiff reported an "overall stable mood" since restarting Cymbalta, but with continued sleeping problems due to pain and difficulty coping as her son's primary caregiver. (R. 906). On June 2, 2020, Plaintiff reported "coping with stress as well as can be expected" with the beneficial effects of Cymbalta. (R. 556). At both visits, she was "much improved," ADLs were unimpaired and mental status examination results were normal. (R. 906-07, 911, 914-15, 919). In a July 13, 2020 TPU, Plaintiff reported experiencing intense daily anxiety over caring for her disabled son, PTSD flashbacks related to his traumatic birth, self-blame, trouble sleeping, panic attacks and depression. (R. 922-23). Plaintiff missed her July 17 and 24, 2020 visits but remained compliant with her medications and therapy. (R. 933). On July

27, 2020, she was stable and doing well, responding well to medication, and "minimally improved,"[2] without significant mental health problems, impairment of her ADLs or remarkable mental health exam results. (R. 933-34, 939).

At her August 24, 2020 treatment session, Plaintiff was "stable," "doing good," responding well to medication, and again rated as minimally improved, with no significant mental health problems, impairment of ADLs or noteworthy mental health exam results. (R. 943-44, 947). On October 5, 2020, Plaintiff was clinically reevaluated due to "longstanding and increasing symptoms of PTSD, which are impacting her daily life and functioning." (R. 951). These symptoms included hypervigilance when going outside, avoiding going outside, panic attacks, concentration and sleep difficulties, lost appetite, increased stress due to virtual schooling during the COVID-19 pandemic, intensifying flashbacks and nightmares regarding her son's traumatic birth, and intrusive thoughts regarding the birth, her son's ongoing medical issues, and witnessing a shooting in her neighborhood. (R. 951, 953-56).

The records of Plaintiff's October 12 and November 16, 2020 treatment sessions track the record from her August 2020 session, with Plaintiff continuing to do well, although her November 11, 2020 treatment plan update noted continued anxiety, flashbacks, self-blame, PTSD, intrusive thoughts, and moderately severe depression. (R. 975-76). On November 30, 2020, Plaintiff received a comprehensive biopsychosocial reevaluation. (R. 975-83). She reported worsening flashbacks and depression following the death of her son two weeks earlier, as well as PTSD symptoms of anxiety, nightmares, and flashbacks. (R. 975). Her appetite and energy level were both fair and her mental examination results were normal. (R. R. 975-77).

---

[2] "Slightly better with little or no clinically meaningful reduction of symptoms. Represents very little change in basic clinical status, level of care or functional capacity." (R. 569).

She was assessed as "minimally worse"[3] and recommended for continued mental health outpatient treatment. (R. 642).

Between December 2020 and February 2021, Plaintiff was stable and doing well, her medication was working, and she was without significant mental health problems, impairment of her ADLs or remarkable mental health exam results. (R. 984-1000). At the December session, in particular, she reported improved sleep and was noted to have "minimally improved." (R. 984, 989). On March 5, 2021, she received a TPU, in which it was noted that she had been unable to start cognitive processing therapy or lower her depression level due to the recent death of her son. (R. 1001). Her depression level remained "severe," and she reported crying spells, lost identity without the role of motherhood, self-blame, low self-esteem, and flashbacks. (R. 1002).

At her March, April and May 2021 appointments, Plaintiff was stable and doing well, with normal ADLs and mental health exam results, although in April she requested an increase of her Trazodone dosage because she had not been sleeping well. (R. 1004-05, 1012-13, 1021-22). She was "minimally improved" at the April and May visits and this section of the form was left blank at the March visit. (R. 1009-10, 1017, 1026). At her June and July 2021 visits, she reported her mood as "slightly depressed but manageable on medication," it was noted that her "psychiatric symptoms stabilized through medication and therapy," and Plaintiff had normal ADLs and mental health exam results, except she stated that she was having flashbacks due to the recent death of her son. (R. 1029-30, 1037-38). At each visit, she was "minimally improved." (R. 1034, 1042). On August 11, 2021, Plaintiff was discharged from Wedge after

---

[3] "Lightly worse but may not be clinically meaningful; may represent very little change in basic clinical status or functional capacity." (R. 977).

moving to a different area of Philadelphia.  (R. 1047).

### III.   ALJ'S DECISION

Following the administrative hearing, the ALJ issued a decision in which she made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since March 1, 2019, the alleged onset date.

3. The claimant has the following severe impairments: adjustment disorder, post-traumatic stress disorder (PTSD), and degenerative disc disease of lumbar disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except can sit up to 8 hours a day in total and stand and/or walk 6 hours a day in total; but can only stand and/or walk for up to an hour at one time. Can frequently push/pull with the upper extremities and occasionally with the lower extremities. Cannot climb ladders, ropes, or scaffolds or crouch and can occasionally perform all other postural maneuvers. Can work in proximity to others, but can have no exposure to the general public, with only

   occasional interactions with supervisors and coworkers, limited to occupations where the work setting, and the tasks performed are typically very similar from day to day.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on September 5, 1979 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2019, through the date of this decision.

(R. 12-32).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 27).

## IV.  LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months.  42 U.S.C. §

1382c(a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If she is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform her past work. If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, he is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it.

*Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V. DISCUSSION

### A. The Parties' Positions

In her request for review, Plaintiff argues that the ALJ's decision as to her mental RFC is not supported by substantial evidence. (Pl.'s Br., ECF No. 8, at 8-12). Specifically, she maintains that the ALJ misconstrued one set of her Wedge treatment records, (Ex. 12F, 555-660), while all but ignoring another set (Ex. 16F, R. 795-1050). (*See* Pl.'s Br., ECF No. 8, at 6, 9).[4] She claims that if the ALJ had properly considered all the evidence, as she was required to under the regulations, she would have seen that the severity, duration and impact of Plaintiff's "symptoms fluctuate[d] significantly," rendering her unable to maintain competitive employment. (*Id.* at 5-10, 12 (citations omitted)). She highlights various treatment notes from 2020 and 2021 that she believes the ALJ misconstrued and accuses the ALJ of incorrectly assuming that Plaintiff's "baseline" throughout the notes improved when it is "far more logical . . . that [she] had returned to her baseline condition and there was no improvement from

---

[4] In the "Statement of Issues" in her opening brief, Plaintiff purports to raise five questions at issue in this matter. (Pl.'s Br., ECF No. 8, at 2-3). However, these questions do not match the headings set forth in the "Argument" section of her brief, which instead reflect a single claim that "the ALJ's decision is not supported by substantial evidence," (*id.* at 8), divided, in turn, into two subclaims: (1) the ALJ did not properly articulate the reasons for the decision; and (2) the ALJ did not properly weigh the evidence. (*Id.* at 8, 11). Further, the arguments contained within each subsection do not necessarily correspond in substance solely to the stated topic, with significant overlap between the purportedly separate contentions. (*See, e.g., id.* at 10-11 (making same argument in each section, at times verbatim)). Therefore, although the Court considers all Plaintiff's substantive arguments, it does so within the framework of Plaintiff's single umbrella claim, that the ALJ's decision as to her mental RFC lacks substantial evidence because the ALJ erred in her consideration of Plaintiff's treatment records from Wedge.

the baseline." (*Id.* at 10-12). She contends that this "stable to slightly deteriorated condition" was characterized by overwhelming symptoms. (*Id.* at 11). Finally, she complains that the ALJ's failure to cite to specific page numbers in the exhibits does not permit a reviewing court to identify which evidence she is addressing. (*Id.* at 12).

The Acting Commissioner counters that substantial evidence supports the ALJ's mental RFC assessment and that Plaintiff merely seeks an improper re-weighing of the evidence. (Resp., ECF No. 9, at 5). She observes that the ALJ noted Plaintiff's positive response to treatment, her stable symptoms, her normal mental health exam results and the lack of any impairments of her ADLs. (*Id.* at 6-7). She refutes Plaintiff's contention that the ALJ mischaracterized the records from Wedge and points to support therein for the ALJ's decision. (*Id.* at 8). In addition, she cites examples in the ALJ's decision of her considering Plaintiff's "waxing and waning" symptoms and denies that an ALJ must address every piece of evidence in the record. (*Id.* at 9). She notes that the ALJ repeatedly stated that her decision was based upon "the entire record" and asserts that none of the evidence cited by Plaintiff undoes the fact that the ALJ's decision rests on substantial evidence. (*Id.* at 9-10).

Plaintiff replies that the Acting Commissioner mischaracterizes her arguments. (Reply, ECF No. 10, at 2). She denies that she is challenging the ALJ's evaluation of her mental functioning and insists that she instead "claims that the ALJ did not fulfill her legal obligations in cobbling together her opinion." (*Id.*). She reiterates that the ALJ's decision is not supported by substantial evidence because the ALJ did not identify which evidence was credited or discounted. (*Id.* at 2-3). Specifically, she repeats her contentions that the ALJ ignored Exhibit 16F and failed to discuss Exhibit 12F fully. (*Id.* at 3-5). According to Plaintiff, these documents contain "powerful facts supporting a finding of disability," yet the ALJ did not explain why she

11

allegedly rejected them. (*Id.* at 4). She claims that the Acting Commissioner cites to the record itself instead of the ALJ's decision citing the record, which she maintains demonstrates that the ALJ failed to support her conclusions. (*Id.* at 4-5). Finally, Plaintiff dismisses the ALJ's claims to have reviewed all evidence and maintains that the ALJ must instead "show her work."[5] (*Id.* at 5 (citations omitted)).

      **B.**      **Analysis**

Initially, Plaintiff is incorrect that the ALJ ignored the records in Exhibit 16F (R. 795-1050). The ALJ explicitly cited Exhibit 16F when she noted: "The claimant missed two appointments in July but returned on July 27th and remained stable despite coping with the grief of her son's passing . . . . (Exhibit 16F)." (R. 22). Further, as noted above (*see supra* footnote 1), the records in Exhibit 12F, with the exception of a single page, are also included in Exhibit 16F, and thus the ALJ's citation to records in Exhibit 12F naturally accounts for records in Exhibit 16F as well. (*See* R. 21-22 (discussing June 2020 through February 2021 Wedge treatment records contained in both exhibits)). Moreover, the ALJ discussed the March 2019 through April 2020 treatment notes, all of which are included in Exhibit 16F but not Exhibit 12F.[6] (R. 21).

---

[5] Because the Court finds, as set forth below, that the ALJ's decision reflects that she fully considered the evidence at issue, the Court does not decide what significance, if any, to attach to the ALJ's assertions that she reviewed "the entire record." (R. 17, 19).

[6] The Court acknowledges that the ALJ's citations in the decision might have been clearer. Her discussion of these notes contains only a single citation, and even that citation is to Exhibit 12F when the specific record identified (from January 2020) is actually in Exhibit 16F instead. (R. 21 (citing 12F); *cf.* R. 879). As Plaintiff further notes, citations to specific pages may also have aided her and this Court in reviewing the ALJ's decision. But notwithstanding the ALJ's suspect citation practices, it is clear from even a brief comparison of the decision with the records contained in Exhibit 16F that she did not ignore them. Rather, beginning with Plaintiff's presentation at intake in October 2018 and concluding with her discharge in August 2021, the ALJ, over approximately one full page of the decision, detailed Plaintiff's monthly visits at Wedge and highlighted many of the most salient notes stemming from them. (R. 21). This in-

The Court thus turns to Plaintiff's claim that the ALJ misconstrued the evidence, highlighting instances in which Plaintiff was doing relatively well but ignoring or discounting other times when, due to the fluctuating nature of her symptoms, she suffered a disabling level of impairment. Having reviewed the ALJ's decision, the Court disagrees that she cherry-picked evidence unfavorable to Plaintiff. *See Piper v. Saul*, No. 2:18-1450, 2020 WL 709517, at *4 (W.D. Pa. Feb. 12, 2020) ("The ALJ is not entitled to 'cherry pick' favorable evidence and ignore records that run counter to her findings."). For example, she acknowledged Plaintiff's recurring anxiety and depressed mood but noted that such symptoms were often associated with Plaintiff not taking her medication or with an external precipitating occurrence. (*See, e.g.,* R. 21 (noting that: (1) in March 2019 Plaintiff's anxiety improved with increased Cymbalta dosage and her depressed mood due to the recent deaths of two neighbors improved with therapy; (2) in May 2019 Plaintiff's mood worsened after she stopped taking her medication consistently; (3) in January 2020 Plaintiff experienced increased symptoms after running out of Cymbalta but her mood had stabilized by April 2020 after resuming it; and (4) in June 2020 Plaintiff reported an increased ability to deal with stress due to Cymbalta; *see* R. 820, 832, 879, 906, 914)). The ALJ also recognized Plaintiff's reports of traumatic nightmares, hypervigilance and worsening flashbacks after her son passed away, however, as the ALJ further observed, Plaintiff continued to remain "stable," have normal mental exam results and report "no impairments in activities of daily living." (R. 21; *see also* R. 803-04, 820, 832, 837, 844, 852 879, 906-07, 914-15, 933-34, 943-44, 957-58, 974-75, 984-85, 993-94, 1004-05, 1012-13, 1021-22, 1029-30, 1037-38); *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("The ALJ must consider all the

---

depth treatment of the records at issue distinguishes this case from *Rios ex rel. Alvarez v. Barnhart*, 365 F. Supp. 2d 637 (E.D. Pa. 2005), cited by Plaintiff, where the court found that the ALJ's failure "to provide a full and reasoned analysis" necessitated remand. *See id.* at 645.

13

evidence and give some reason for discounting the evidence she rejects.").

Plaintiff posits that even if she was stable, it was nonetheless at a level of impairment that would not permit her to maintain regular and continuous employment. (Pl.'s Br., ECF No. 11, at 11). In support of this position, she maintains that references to her "improvement" in August 2019 referred only to her change from baseline, to which she subsequently returned, negating any supposed "improvement." (*Id.*). She claims that if she continually improved during the summer of 2020, as the ALJ reads the records, there would have been no reason to ever note any "lack of improvement from the higher level of function; there would be little need to improve." (*Id.*). However, the underlying record evidence supports the ALJ's interpretation, not that of Plaintiff. The same August 2020 record that, according to Plaintiff, shows her functioning only at baseline also notes "that she has been doing good," that she denied any "significant depression" or other serious mental health issues, that she was "responding well on current medication regimen with [positive] therapeutic effect," that she "[d]enied any functional impairment in activities of daily living" and that she had normal mental exam results. (R. 942-43). Clearly these notes do not describe, as Plaintiff puts it, one "overwhelmed by the presence of intrusive symptoms." (Pl.'s Br., ECF No, 8, at 11). Moreover, Plaintiff fails to explain why the purported fact that she "had returned to her baseline condition" is reflected nowhere in the monthly records. (*Id.*).

Plaintiff's reading of the October 2020 records is also problematic. She claims that the ALJ's treatment of the notes was "completely contradictory to the medical evidence" when the ALJ found that "claimant denied significant depression, mania and psychosis" and that her "mental status exam findings were unremarkable." (*Id.* at 10 (citing R. 21)). But the ALJ's findings are backed by substantial evidence. The first finding is pulled directly from the

treatment note.  (R. 957 (noting that Plaintiff "[d]enies any significant depression, mania, psychosis, SI/HI [suicidal ideation/homicidal ideation] or AVH [audio-visual hallucinations]")).  Further, the second quotation is consistent with Plaintiff's exam results, which are noted on the form primarily as "unremarkable," "normal," and "fair."  (R. 957-58).  Plaintiff continues by pointing to contemporaneous records that tend to indicate that Plaintiff suffered from greater impairments, (Pl.'s Br., ECF No. 8, at 11 (citing R. 617, 638, 645, 649)), but at most these records would merely have permitted the ALJ to reach a contrary conclusion.  However, an ALJ's decision does not lack substantial evidence simply because the ALJ might have reached a different result.  *See Simmonds*, 807 F.2d at 58 ("While there is other evidence in the record that could support a finding of disability . . . , our inquiry is not whether the ALJ could have reasonably made a different finding based on this record.  Rather, we must review whether the ALJ's actual findings are supported by substantial record evidence.").

      Plaintiff's criticisms of the ALJ's treatment of the November 2020 notes suffer from the same flaws.  She insists that the ALJ was required to "directly confront and reject" the fact that in the November 2020 records Plaintiff showed "minimal improvement" before becoming "minimally worse" a few weeks later.  (Pl.'s Br., ECF No. 8, at 12).  However, the ALJ was not required to record every ebb and flow of Plaintiff's conditions.  *See Hur v. Barnhart*, 94 F. App'x. 130, 133 (3d Cir. 2001) ("There is no requirement that the ALJ discuss in [her] opinion every tidbit of evidence included in the record.").  Moreover, the ALJ did not, as Plaintiff suggests, ignore this evidence.  Instead, she noted that in November 2020 Plaintiff was "stable and continued to respond well to medications" before worsening later in the month after "her son recently passed away . . . ."  (R. 21).

      In short, the ALJ's determination of Plaintiff's mental RFC is supported by substantial

evidence because the evidence relied upon by the ALJ in her decision is such that "a reasonable mind might accept as adequate" to support the finding. *Burnett*, 220 F.3d at 118 (3d Cir. 2000). Accordingly, the Court will not disturb the decision.

## VI. CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **DENIED**. An appropriate Order follows.

        BY THE COURT:

          /s/ Lynne A. Sitarski
        LYNNE A. SITARSKI
        United States Magistrate Judge